## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Aron Robert Moore,                                    Civ. No. 16-3585 (MJD/BRT)

        Plaintiff,

v.

Nancy A. Berryhill,                                   **REPORT AND**
Acting Commissioner of                                **RECOMMENDATION**
Social Security,

        Defendant.

---

David F Chermol, Esq., Chermol & Fishman LLC; Edward C. Olson, Esq., Disability Attorneys of Minnesota, counsel for Plaintiff.

Pamela Marentette, Esq., United States Attorney's Office, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

      Pursuant to 42 U.S.C. § 405(g), Plaintiff Aron Robert Moore seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits. This matter has been referred to the undersigned for a Report and Recommendation and is before this Court on the parties' cross-motions for summary judgment pursuant to Local Rule. *See* 28 U.S.C. § 636; D. Minn. LR 72.1(a)(3)(D); (Doc. Nos. 15, 18). For the reasons stated below, this Court recommends that Plaintiff's Motion for Summary Judgment be granted in part and denied in part, Defendant's Motion for Summary Judgment be granted in part and denied in part, and this matter be remanded consistent with this Report and Recommendation.

# BACKGROUND

## I.    Procedural History

Plaintiff filed an application for Title II Disability Insurance Benefits ("DIB") in February 2012. (Tr. 115, 282–85.)[1] Plaintiff's alleged onset date is April 27, 2009, and his date last insured[2] for DIB was December 31, 2014. (Tr. 115.) The Commissioner denied Plaintiff's claim initially (Tr. 160–66) and on reconsideration. (Tr. 167–70.) Upon request, an Administrative Law Judge ("ALJ") held an initial hearing in January 2014. (Tr. 83.)

Following the hearing, the ALJ submitted interrogatories to both physical medicine and mental health medical experts. The responses to the interrogatory requests were received and submitted into the record and proffered to Plaintiff and his representative. (Tr. 371–76; 1105–25.) The representative subsequently requested a supplemental hearing, which was held on July 28, 2014. (Tr. 45.) Plaintiff attended both hearings in person. (Tr. 45, 83.)

During the supplemental hearing, Dr. Robert Beck, the physical medical expert, indicated that a functional capacity evaluation would help properly evaluate Plaintiff's physical conditions. (Tr. 58.) A physical consultative examination was then scheduled,

---

[1]    Throughout this Report and Recommendation, the abbreviation "Tr." is used to reference the Administrative Record. (Doc. No. 13.)

[2]    *See Fishbaugher v. Astrue*, 878 F. Supp. 2d 939, 942 n.2 (D. Minn. 2012) ("A claimant has to establish 'the existence of a disability on or before the date that the insurance coverage expires.'") (quoting *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984)).

and the report resulting from the examination was entered into the record and proffered to the Plaintiff's representative. (Tr. 1137–48.) Neither Plaintiff nor his representative submitted a response. (Tr. 14.) The ALJ then submitted a request for an updated interrogatory response from Dr. Beck in light of the newly submitted examination report, and Dr. Beck submitted an updated interrogatory response, which was entered into the record. (Tr. 1156–60.) Neither Plaintiff nor his representative responded to the proffered exhibit. (Tr. 15.)

The ALJ issued an unfavorable decision on July 16, 2015. (Tr. 11–36.) Plaintiff sought review of the ALJ's decision, but the Social Security Administration ("SSA") Appeals Council denied Plaintiff's request for review on August 22, 2016. (Tr. 1–7.) This denial made the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 404.981.

On October 21, 2016, Plaintiff filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g). (Doc. No. 1, Compl.) The parties have now filed cross-motions for summary judgment pursuant to Local Rule 7.2(c)(1). (Doc. Nos. 15, 18.) In his motion, Plaintiff alleges that the ALJ erred by: (1) failing to properly consider Dr. Bradley's opinion[3]; (2) failing to adopt all of the limitations described by Dr. Handrich[4]; (3)

---

[3]    Dr. David Bradley was Plaintiff's treating pain specialist from January 2010 through approximately April 2011. (Tr. 485–89; 544–48.)

[4]    Dr. Roger Handrich was Plaintiff's treating psychiatrist. (Tr. 766–67; *see e.g.*, Tr. 775.)

improperly giving substantial weight to Dr. Beck's expert medical opinion[5]; and (4) improperly finding Plaintiff did not have a closed period of disability without any supporting evidence. (Doc. No. 16, Pl.'s Mem. 6–19.) Plaintiff maintains that because of these errors, the Court should order an immediate award of benefits. (*Id.* at 19.) Alternatively, Plaintiff requests that this matter be remanded for further development and analysis. (*Id.* at 19.) Defendant disagrees and requests that the Commissioner's decision be affirmed because the ALJ's decision is legally sound and supported by substantial evidence. (Doc. No. 19, Def.'s Mem. 8–18.)

## II.   General Background

Plaintiff graduated from high school in 2002. (Tr. 309.) He worked full-time as a loader/fork lift driver at a Coca-Cola bottling plant from 1999 until 2009. (Tr. 309–10.) Plaintiff worked in shipping and receiving where he stacked things on palates, loaded and unloaded trucks, and built palates. (Tr. 310.) Plaintiff stopped working at the plant on April 27, 2009, because of a back injury. (Tr. 309.) Plaintiff was twenty-six years old on his alleged onset date. (Tr. 305.)

Plaintiff's 2009 back injury was a disc desiccation at L4-L5 and L5-S1 with annular tears and disc herniations with nerve impingement. (Tr. 447.) He had the first of three back surgeries, a disc decompression and discectomy, on August 20, 2009. (Tr. 414, 435–36.) Plaintiff underwent a second surgery on November 23, 2009, to correct a disc herniation and a small cyst causing further impingement. (Tr. 404, 433–34.) On

---

[5]   As referenced above, Dr. Beck was the medical expert who reviewed Plaintiff's record in its entirety and responded to interrogatory and hearing questions from the ALJ.

November 16, 2010, Plaintiff underwent his third back surgery – a spinal fusion to treat intractable back pain. (Tr. 608–11.) Plaintiff was hospitalized again from December 2 until December 8, 2010, due to a post-surgical wound infection. (Tr. 593, 650–51.)

In addition to his physical conditions, in January 2012, Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD"), a depressive disorder, and amphetamine dependence. (Tr. 665, 670.) He takes prescription medication for anxiety, depression, insomnia, ADHD, and pain. (Tr. 370.) Plaintiff testified that he used methamphetamine several times in August 2012 and underwent chemical dependency treatment as a result. (Tr. 95.) At the time of the last hearing, Plaintiff was taking prescribed methadone in decreasing doses with the goal of ending his use of the drug completely. (Tr. 53–54.)

### III.    The ALJ's Findings and Decision

On July 16, 2015, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 11–36.) The ALJ followed the five-step evaluation process dictated by 20 C.F.R. § 404.1520(a)(4), which involves the following determinations: (1) whether Plaintiff is involved in "substantial gainful activity"; (2) whether Plaintiff has a severe impairment that significantly limits his mental or physical ability to work; (3) whether Plaintiff's impairments meet or equal a presumptively disabling impairment listed in the regulations; (4) whether Plaintiff has the residual functional capacity ("RFC") to perform his past work; and (5) if Plaintiff cannot perform his past work, whether the government has shown that Plaintiff can perform other work, and that there is a sufficient number of those jobs available in the national economy. (Tr. 15–17); *see Fines v. Apfel*, 149 F.3d 893, 894–95 (8th Cir. 1998).

At step one of the evaluation, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 27, 2009. (Tr. 17.) At step two, the ALJ determined that Plaintiff had the following severe impairments:

> [C]hronic low back pain with muscle spasm, spinal enthesopathy and myofascial pain, status post multiple back surgeries, including a multilevel fusion procedure for degenerative disc disease of the lumbar spine from L4 to S1, with residual right leg pain and stenosis (also described as failed back syndrome); chronic pain syndrome/pain disorder associated with both psychological and medical condition; attention deficit hyperactivity disorder, combined type; major depressive disorder, recurrent/depressive disorder, not otherwise specified (NOS); post-traumatic stress disorder (PTSD); and polysubstance dependence (methamphetamines), in remission since September 2012.

(*Id*.)

Since the ALJ determined that Plaintiff had severe impairments, he continued to step three of the analysis, where a claimant has the burden to show that his impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(iii). With respect to Plaintiff's back impairment, the ALJ gave great weight to Dr. Beck's opinion. (Tr. 19.) The ALJ found that the medical record showed both positive and negative straight leg raising tests, and an EMG showing mild chronic L5-S1 radiculopathy on the right, but included no reports of neurological deficits or lower extremity atrophy associated with positive straight leg raising on clinical examinations. (*Id*.) Thus, the ALJ found that, with respect to Listing 1.04, disorders of the spine, Plaintiff's medical record did not satisfy the types of neurological findings that are required. (*Id*.) The ALJ also found evidence of normal lower extremity strength, normal

reflexes, normal sensation, and that the Plaintiff's fusion is solid. (*Id.*) In addition, the ALJ found that the Plaintiff's lower extremity pain appeared to be referred pain given the absence of objective neurological findings. (*Id.*) Further, with respect to Plaintiff's physical impairments, the ALJ gave little weight to the opinion of Dr. A. Neil Johnson, the physical consultative examiner, because he unduly relied on Plaintiff's subjective complaints, which were not supported by the treatment record. (*Id.*) The ALJ also found that Dr. Johnson's comments regarding Plaintiff's demeanor were internally inconsistent and that his comments about Plaintiff's ability to walk without a cane were both internally inconsistent and inconsistent with the treatment record. (Tr. 20.) In addition, Dr. Johnson's finding of positive straight leg testing was not accompanied by any findings of muscle atrophy, which would confirm the presence of a neurological impairment required under Listing 1.04. (*Id.*) Consequently, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met the severity standard in Listing 1.04. (Tr. 19.)

With respect to Plaintiff's mental impairments, the ALJ gave great weight to the opinion of Dr. Stevens, the mental medical expert who testified via interrogatories and at the supplemental hearing, because her opinion was well supported by the record and because Dr. Stevens was an impartial expert with knowledge of the Social Security disability requirements. (Tr. 20.) Dr. Stevens testified that the pain disorder associated with medical and psychological conditions can be evaluated under Listing 12.07. (*Id.*) Dr. Stevens further testified that the severity of Plaintiff's mental impairments did not meet or medically equal the criteria of Listings 12.02, 12.04, 12.06, 12.07, and 12.09.

(*Id.*) The ALJ found this conclusion consistent with Global Assessment of Functioning

("GAF") scores of 53 to 55[6] and treatment notes, which showed few side effects from

prescribed medication. (*Id.*) The ALJ determined that the Plaintiff's mental impairments

did not result in a marked limitation of any of the four areas of mental function, thus they

did not satisfy the "paragraph B" criteria. (Tr. 20–21.) In so finding, the ALJ gave great

weight to the opinions of the state agency psychological consultants because their

opinions are well supported by the treatment notes and other evidence of Plaintiff's daily

activities. (Tr. 21.) The ALJ also considered whether Plaintiff's impairments satisfied the

"paragraph C" criteria and concluded that the evidence failed to establish the presence of

the "paragraph C" criteria. (*Id.*) Consequently, the ALJ determined that Plaintiff did not

have an impairment or combination of impairments that met the severity standard.

(Tr. 19.)

The ALJ then determined Plaintiff's RFC. 20 CFR 404.1520(e). In determining

Plaintiff's RFC, the ALJ considered first whether Plaintiff's medical impairment could

---

[6]     The Global Assessment of Functioning (GAF) Scale is used to report "the clinician's judgment of the individual's overall level of functioning." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Revision 2000). GAF scores of 41 to 50 reflect "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34. GAF scores of 51–60 indicate "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* GAF scores of 61–70 indicate "[s]ome mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

reasonably be expected to produce his symptoms, and second, the extent to which the symptoms limit Plaintiff's functioning. (Tr. 22.) The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that his "statements concerning the intensity, persistence and limiting effects" of the symptoms were not entirely credible. (Tr. 23.)

In formulating Plaintiff's RFC, the ALJ considered the opinions from the many treating and non-treating medical sources and consultants. He afforded controlling weight to the opinion of Dr. Roger Handrich, the treating psychiatrist. (*Id.*) He stated that Dr. Handrich's "opinion regarding the severity of the claimant's psychological symptoms is consistent with his treatment notes showing improvement with use of medications, mostly stable mental status, and GAF scores indicating no more than mildly to moderately severe symptoms/impairment of functioning." (*Id.*) In addition, the ALJ gave some weight to the state agency psychological consultants and incorporated their opinions into Plaintiff's RFC. (*Id.*) The ALJ also gave great weight to the opinion of Dr. Stevens, the impartial psychological expert, as her testimony and response to interrogatories was "consistent with GAF scores and examination findings from treating source notes." (*Id.*) Likewise, the ALJ afforded substantial weight to the opinion of Dr. Beck, the impartial medical expert. (Tr. 26.) The ALJ reasoned that the limitations assessed by Dr. Beck are "supported by the examination findings discussed above, with the exception of some environmental limitations which are not tied to a specific medically determinable impairment." (*Id.*) Further, Dr. Beck "is the only provider to

9

review the entire longitudinal record and he has expertise and great familiarity with Social Security disability requirements." (*Id.*)

The ALJ afforded zero weight to the opinion of Dr. Douglas Henning, the treating psychotherapist, because it was inconsistent with Dr. Handrich's opinion and findings, inconsistent with the mental health treatment and findings in the Plaintiff's medical record, and inconsistent with his own GAF score of 55. (Tr. 26.) The ALJ gave little weight to the opinion of the Plaintiff's father because it was not consistent with the objective medical findings or evidence of the Plaintiff's actual daily life activities. (*Id.*) The ALJ also found Plaintiff's primary care physician Dr. Nelson's opinion less persuasive and gave it little weight because the extreme limitations he suggested were not supported by his minimal treatment notes or with the findings of other treating providers. (*Id.*) The ALJ gave little weight to the opinion of Dr. Johnson, the consulting physician, because he "gave disproportionate weight to the claimant's subjective complaints, the report is internally inconsistent, and his findings are not consistent with any other evidence in the record." (*Id.*) The ALJ also gave little weight to the state agency medical consultants as they did not take the entire medical record into consideration. (Tr. 27.)

Weighing all of the above opinions, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a), but only with the following nonexertional limitations:

> [Plaintiff] requires a brief 1-2 minute change of position after every 20 to 30 minutes of sitting, standing and walking; [is limited to] occasional climbing of ramps and stairs; no climbing of ladders/ropes/scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; occasional use of foot controls on the right, and frequently on the left; no

> exposure to unprotected heights or moving machine parts; no commercial
> driving; occasional exposure to vibrations; limited to routine, simple and
> repetitive tasks; brief and superficial contact with coworkers, the public and
> supervisors, defined as no more than occasional contact that is short and
> succinct in duration that involves no more than cursory and passing contact
> or exchanges in work that is not primarily team oriented; not able to work
> at a fast production rate pace, such as an assembly line worker, but can
> perform goal oriented work; capable of low stress, defined as work
> requiring no more than occasional decision making; and no work in an
> environment with exposure to drugs or alcohol.

(Tr. 22.) At step four, with the benefit of testimony from a vocational expert, the ALJ determined that Plaintiff was unable to perform any past relevant work as a material handler through the date last insured. (Tr. 27.)

The ALJ continued to step five and determined that despite Plaintiff's conditions, there are jobs that exist in significant numbers in the national and state economies that Plaintiff can perform given his age, education, work experience, and RFC. (Tr. 27–28.) The ALJ based his determination on the vocational expert's testimony at the supplemental hearing that Plaintiff would be able to perform the requirements of occupations such as bench worker, printed circuit touch up film inspector, and optical accessory polisher. (Tr. 28.) Accordingly, the ALJ found Plaintiff not disabled as defined in the Social Security Act from the alleged onset date of April 27, 2009 through December 31, 2014, the date last insured. (Tr. 29.)

## DISCUSSION

## I.    Standard of Review

Congress has established the standards by which Social Security disability insurance benefits may be awarded. The SSA must find a claimant disabled if the

claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is entitled to disability insurance benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a). Once the claimant has demonstrated that he cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the [RFC] to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

The Court has the authority to review the Commissioner's final decision denying disability benefits to Plaintiff. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). If the Commissioner's decision is supported by substantial evidence in the record as a whole, then the decision will be upheld. 42 U.S.C. § 405(g); *Kluesner*, 607 F.3d at 536 (citations omitted). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent

12

conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994). The Court thus considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner*, 607 F.3d at 536. The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003). If, after review, the record as a whole supports the Commissioner's findings, the Commissioner's decision must be upheld, even if the record also supports the opposite conclusion. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Goff v. Barnhart* 421 F.3d 785, 789 (8th Cir. 2005).

## II.    Analysis of the ALJ's Decision

Plaintiff argues that the ALJ erred by: (1) failing to adopt all of the limitations described by Dr. Handrich; (2) improperly giving substantial weight to Dr. Beck's medical expert opinion; (3) failing to properly consider Dr. Bradley's opinion; and (4) improperly finding Plaintiff did not have a closed period of disability without any supporting evidence. (Pl.'s Mem. 6–19.)

### A.    The ALJ Properly Considered and Adopted the Limitations Recommended by Dr. Handrich

Plaintiff argues that, although the ALJ gave "controlling weight" to the opinion of the treating psychiatrist Dr. Handrich and adopted some of Dr. Handrich's limitations, "the ALJ failed to adopt or reject moderate limitations in completing a normal work-day

13

or work-week without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods." (Pl.'s Mem. 11.) In response, the Commissioner argues that the ALJ properly considered Dr. Handrich's opinion and accounted for all of Dr. Handrich's restrictions. (Def.'s Mem. 11.)

The ALJ gave controlling weight to Dr. Handrich because "his opinion regarding the severity of the [Plaintiff's] psychological symptoms is consistent with his treatment notes showing improvement with use of medications, mostly stable mental status, and GAF scores indicating no more than mildly to moderately severe symptoms/impairment of functioning." (Tr. 26.) The ALJ specifically referenced Dr. Handrich's treatment notes when describing Plaintiff's psychological symptoms during the period from August 2012 until April 2014. (Tr. 24, 737, 775–77, 786, 799, 819, 821, 1127.)

Dr. Handrich's assessment of Plaintiff indicated that Plaintiff had moderate limitations in his ability to: "[u]nderstand and remember detailed instructions"; "[c]arry out detailed instructions"; "[c]omplete a normal work-day and work-week, without interruptions from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods"; "[i]nteract appropriately with the general public"; "[a]ccept instructions and respond appropriately to criticism from supervisors"; "[g]et along with coworkers or peers without distracting them or exhibiting behavioral extremes"; "[t]ravel in unfamiliar places or use public transportation"; and "tolerate normal levels of stress." (Tr. 766.) The ALJ gave

14

Dr. Handrich's opinion controlling weight, and incorporated the following limitations

into his RFC finding:

> . . . [R]equires a brief 1-2 minute change of position after every 20 to 30
> minutes of sitting, standing and walking; . . . limited to routine, simple and
> repetitive tasks; brief and superficial contact with coworkers, the public and
> supervisors, defined as no more than occasional contact that is short and
> succinct in duration that involves no more than cursory and passing contact
> or exchanges in work that is not primarily team oriented; not able to work
> at a fast production rate pace, such as an assembly line worker, but can
> perform goal oriented work; [and] capable of low stress, defined as work
> requiring no more than occasional decision making. . . .

(Tr. 22.) Although he did not use Dr. Handrich's exact words, the limitations provided by

the ALJ are consistent with Dr. Handrich's assessment. (Tr. 766.)

Plaintiff further more specifically argues that Dr. Handrich's assessment that

Plaintiff was moderately limited in his ability to complete a normal work schedule

without an "unreasonable number and length of rest periods" would require Plaintiff to

take breaks from work "in addition to those breaks for changes of position." (Pl.'s Mem.

12.) There is nothing in Dr. Handrich's Medical Source Statement to suggest that this

was, in fact, Dr. Handrich's assessment. Dr. Handrich neither confirmed nor denied that

Plaintiff would "require *unscheduled* breaks during an 8-hour work day, in addition to the

standard 15 minute morning, lunch and afternoon breaks." (Tr. 767 (emphasis in

original).) Rather, Dr. Handrich wrote that any necessary unscheduled breaks would be

"relative to back pain." (*Id.*) Thus, Plaintiff's argument that Dr. Handrich recommended

additional breaks on top of those reflected in the RFC is not supported by evidence in the

medical record. For these reasons, the ALJ properly considered and adopted the

limitations described by Dr. Handrich.

**B.    The ALJ Properly Afforded the Opinion of Dr. Beck Substantial Weight and Granted Little Weight to the Opinion of Dr. Nelson**

Plaintiff argues that the ALJ erred in granting Dr. Beck's opinion substantial weight because Dr. Beck "refused" to acknowledge that Plaintiff's pain might have limiting effects. (Pl.'s Mem. 13.) Plaintiff further argues that Dr. Beck's rejection of Dr. Nelson's opinion, because it was "probably all based on the pain issues," casts doubt on the ALJ's rejection of the opinion of Dr. Nelson, a treating pain management specialist. (Pl.'s Mem. 13.) In support, Plaintiff points to the extensive history of pain management treatment as evidence that Plaintiff's pain had more severe limiting effects than the ALJ acknowledged. (Pl.'s Mem. 14.) Plaintiff also points to the fact that Dr. Beck suggested a functional capacity evaluation "would be helpful." (*Id.*) In response, the Commissioner argues that the ALJ properly gave substantial weight to Dr. Beck's medical expert opinion and that Plaintiff's arguments in regard to Dr. Beck's "refusal to acknowledge that pain may have limiting effects" and Dr. Beck's comment that a functional capacity evaluation would have been helpful have no merit and should be dismissed. (Def.'s Mem. 14–15.)

The factors considered in determining the weight to give medical opinions are: (1) length of treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the physician's assessment compared to the record; (4) consistency of the physician's assessment with the record; (5) specialization(s) of the physician; and (6) other factors. 20 C.F.R. § 404.1527(c)(2)– (6). The ALJ concluded that Dr. Beck's opinion was entitled to substantial weight

because "it is supported by the examination findings discussed above, with the exception of some environmental limitations which are not tied to a specific medically determinable impairment" and because he "is the only provider to review the entire longitudinal record and he has expertise and great familiarity with Social Security disability requirements." (Tr. 26.) In contrast, the ALJ afforded little weight to the opinion of Randy Nelson, D.O., the primary care physician, because Dr. Nelson suggested "extreme limitations [that] are not supported by his very minimal treatment notes at Exhibit 23F, or with the limited findings noted on examinations by other treating providers at Exhibits 20F and 21F." (*Id.*)

A brief summary of the record with regard to each doctor's opinion shows there was substantial evidence in the record to support the ALJ affording Dr. Beck's opinion substantial weight and granting Dr. Nelson's opinion little weight.

Dr. Nelson's contributions to the medical record include pain management treatment notes. (Tr. 1055–77, 1130–36.) However, Dr. Nelson's pain medical source statement did not include any references to objective medical findings in support of his suggested limitations. (Tr. 781–82.) In general, Dr. Nelson's treatment notes are minimal, usually indicating Plaintiff's progress with the use of treatment and medication for constipation; Plaintiff's progress on decreasing his use of methadone; and notes about refilling Plaintiff's pain medication for chronic low back pain. (Tr. 1055–77.) There are no notes related to the intensity of Plaintiff's chronic back pain, effectiveness of the prescribed medicine in treating that pain, or how Plaintiff's pain limits his functional abilities. Thus, because Dr. Nelson's evaluation is not supported by objective medical

findings—either his own or those of other examining physicians—or explanations of how he reached his conclusions, the ALJ properly afforded the opinion of Dr. Nelson little weight.

In contrast, in his initial response to interrogatories in February 2014, Dr. Beck cited Plaintiff's medical record extensively, including epidural injection procedure notes, MRI interpretation and conclusions, and examination records from Dr. Kapoor and Dr. Ang during the time period from June 2009 until January 2010 (Tr. 418, 423, 428, 446, 873); pre- and post-surgical assessments by Dr. Gerdes and Dr. Dingman, as well as operative procedure notes from Dr. Gerdes during the time period from August 2009 until January 2010 (Tr. 398, 402, 404, 413, 433, 882); Dr. Bradley's nerve conduction studies from January 2010 (Tr. 975); Dr. Bradley's pain management treatment notes during the time period from January 2010 until October 2010 (Tr. 512, 515, 527, 544, 907, 977, 1005); neurological evaluation notes from Dr. Lo from May 2010 (Tr. 1003); spinal cord stimulator evaluation notes from Dr. Wolff in June 2010 (Tr. 885); lumbar discography procedure notes from Dr. Schellhas and post-operative MRI interpretation notes and conclusions from Dr. Ang during the time period from June 2010 until August 2010 (Tr. 444, 470); clinic visit notes, anterior exposure of the discectomy surgery notes, and examination notes from Dr. Polly and Dr. Blake during the time period from August 2010 until February 2012 (Tr. 599, 605, 608); progress notes from Dr. Ensign and Dr. Weslander during the time period from October 2011 until January 2012 (Tr. 478–79, 481, 1044.); Dr. Nelson's pain medical source statement from March 2013 (Tr. 781–82);

the ARMHS Functional Assessment from May 2013 (Tr. 809); and examination notes

from Dr. Kampa and Dr. Polly in August 2013 (Tr. 864–65). (Tr. 1116.)

Plaintiff correctly points out that in his initial response to interrogatories and again

following his participation at the supplemental hearing on July 28, 2014, Dr. Beck

recommended that a functional capacity evaluation would be helpful. (Pl.'s Mem. 12;

Tr. 1116, 1156.) In his second response to interrogatories in January 2015, Dr. Beck cited

Dr. Nelson's pain management progress notes during the time period from December

2013 until March 2014 (Tr. 1130–32); and Dr. A. Neil Johnson's disability consultative

report and medical source statement from November 2014. (Tr. 1137–48.) In his updated

response to interrogatories, Dr. Beck, however, maintained his original opinion with

regard to Plaintiff's activity levels. (Tr. 1159.)

Plaintiff also argues that Dr. Beck ignored Plaintiff's subjective complaints of

pain. (Pl.'s Mem. 13.) But Dr. Beck's opinion specifically references Dr. Nelson's pain

management notes along with extensive pain management treatment notes from

Dr. Bradley; therefore, he did not ignore Plaintiff's subjective complaints of pain.

(Tr. 1116, 1156.) Rather, as outlined above, Dr. Beck included both objective findings of

record and subjective complaints of pain—to the extent they were included in the

treatment notes—in his expert opinion. Further, the Commissioner appropriately

corrected Plaintiff in pointing out that Dr. Beck did have the opportunity to review the

consultative examiner's report and update his response to interrogatories thereafter.

(Def.'s Mem. 15; Tr. 1156–60.) After reviewing Dr. Nelson's pain management

treatment notes and Dr. Johnson's report, Dr. Beck maintained his opinion with regard to

Plaintiff's functional limitations. (Tr. 1159.) As such, Plaintiff's arguments with regard to these points are without merit.

Based on Dr. Beck's thorough examination of Plaintiff's entire medical record outlined above, specific references thereto, and his familiarity with Social Security disability requirements, the ALJ concluded that the opinion of Dr. Beck was based on objective medical findings and properly afforded it substantial weight. *See* 20 C.F.R. § 404.1527(c)(2)–(6). For these reasons, the ALJ did not err in his assignment of weight to Dr. Beck's and Dr. Nelson's opinions.

### C.    The ALJ did not Assign Weight to the Opinion of Dr. Bradley

Plaintiff contends that the ALJ ignored an opinion concerning Plaintiff's RFC offered by Dr. Bradley, "a treating pain management specialist," which contradicted the ALJ's RFC finding. (Pl.'s Mem. 7.) Plaintiff further argues that, as a treating physician, Dr. Bradley's opinion was entitled to "greater weight than the opinions of non-treating sources." (Pl.'s Mem. 9.) In response, the Commissioner argues that the ALJ correctly evaluated Dr. Bradley's opinion and that he provided sufficient rationale for rejecting the opinion. (Def.'s Mem. 8.)

The first question is whether Dr. Bradley was in fact a "treating source" within the meaning of the regulations. If not, Dr. Bradley's opinion was not entitled to presumptive greater weight than the opinions of other non-treating sources and it should have been given weight according to the factors listed in 20 C.F.R. § 404.1527(c). *See Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

The regulations define treating source as "your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1527(a)(2). The definition continues: "Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." (*Id*.) The treating physician status "requires a relationship of both duration and frequency." *Doyal*, 331 F.3d at 762.

Dr. Bradley first examined the Plaintiff on January 19, 2010. (Tr. 544.) On January 22, 2010, following that first visit, Dr. Bradley completed a work restriction form limiting Plaintiff to lifting only two pounds and recommending that Plaintiff change positions every ten minutes. (Tr. 969.) It is this January 22, 2010 form that Plaintiff contends should have been credited in the ALJ's RFC finding. (Pl.'s Mem. 7.) At the time Dr. Bradley wrote that opinion, he had examined Plaintiff on only one occasion. (Tr. 544.) Although Dr. Bradley continued to treat the Plaintiff through April 2011, because he had only examined Plaintiff once as of January 22, 2010, at the time Dr. Bradley wrote the opinion at issue, he was not a treating physician within the meaning of the regulations. (Tr. 485–89, 544–48); *see Conklin v. Barnhart*, 206 F. App'x 633, 636 (8th Cir. 2006) (finding that the "opinion of a consulting physician who has seen a claimant only once" should be given less weight); *see also Doyal*, 331 F.3d at 763

21

("[T]he opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion.").

For non-treating sources, the factors considered in determining the weight to give the opinion are: (1) length of treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the physician's assessment compared to the record; (4) consistency of the physician's assessment with the record; (5) specialization(s) of the physician; and (6) other factors. 20 C.F.R. § 404.1527(c)(2)–(6).

At the time of the opinion at issue, Dr. Bradley had examined Plaintiff once, which qualifies him as an "examining medical professional." *See Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015) (finding a doctor qualified as an examining medical professional even though he had only examined the claimant once). "Opinions of examining medical professionals are given more weight than nonexamining medical professionals." *Id*. However, "[s]ources in the record, even those of treating physicians, are entitled to less weight when 'inconsistent or contrary to the medical evidence as a whole.'" *Baker v. Colvin*, 620 F. App'x 550, 556 (8th Cir. 2015) (quoting *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011)); *see also Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) ("An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.") (quotation and citation omitted); *Hancock v. Secretary of the Dep't of Health, Educ. And Welfare*, 603 F.2d 739, 740 (8th Cir. 1979)

22

("[T]he report of a consulting physician who examined the claimant once does not constitute 'substantial evidence' upon the record as a whole . . .").

Plaintiff contends the ALJ erred by failing to consider Dr. Bradley's opinion and by failing to assign weight to that opinion. Contrary to Plaintiff's first assertion, the ALJ did consider at least part of Dr. Bradley's opinion. He specifically referred to Dr. Bradley's aforementioned one-page work restriction form (i.e., "21F/103") in his decision, in the context of discussing Dr. Bradley's note: "may use cane." (Tr. 24, 969.) The ALJ dismissed that note because, although the use of a cane is mentioned in the medical record, there is no documented need for or prescription for the use of a cane. (Tr. 24, 1120.) The ALJ further referenced Exhibits 3F and 21F (which includes Dr. Bradley's treatment notes), in various other places in his decision, including when he found that "most examinations show normal lower extremity strength, normal reflexes and normal sensation," and when stating that "imaging studies show that the claimant's fusion is solid." (Tr. 19; *see also* Tr. 18, 25, 26.)

The ALJ did not discuss Dr. Bradley's restriction for lifting only two pounds and his recommendation that Plaintiff change positions every ten minutes. And— importantly—the ALJ did not assign weight to Dr. Bradley's one-page work restriction form in his decision. "Federal regulations provide that every medical opinion in the record *should* be evaluated." *Winters-Baker v. Colvin*, No. 3:14CV359/ CJK, 2015 WL 5635243, at *9 (N.D. Fla. Sept. 18, 2015) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th

Cir. 2011). "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' [courts] will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Id.* (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). Further, "[a] court may not merely presume that if the ALJ does not discuss a medical opinion, the opinion must have been given little or no weight." *Williams v. Astrue*, No. 3:10-cv-00235-J-JBT, 2011 WL 721501, *3 (M.D. Fla. Feb. 22, 2011). "If the Court makes such a presumption, it in effect abdicates its responsibility to scrutinize the record as a whole to determine whether the conclusions reached as rational." *Id.* (quotations omitted).

    This Court recognizes that under limited circumstances failure to explicitly state the weight given to an examining physician's opinion can be harmless error. *See Winters-Baker*, 2015 WL 5635243, at *9 (citing Fed. R. Civ. P. 61; *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine to a Social Security appeal and explaining courts will disregard any errors or defects in a lower tribunal that "do not affect any party's substantial rights."); *Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008) (holding that the ALJ's failure to discuss weight given to examining physician constituted harmless error where limitations assessed by physician would not affect plaintiff's ability to perform job cited by VE; ALJ's failure to discuss weight given to examining psychologist constituted harmless error where opinion did not contradict the ALJ's finding and was substantially similar to that of another doctor whose opinion was given substantial weight); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535–36 (6th Cir. 2001) (holding that the ALJ's failure to discuss a physician's opinion constituted

harmless error where the ALJ had attributed limitations of the claimant that were consistent with the doctor's opinion); *see also Shireman v. Colvin*, No. 3:15cv99-CJK, 2016 WL 2939157, at *8 (N.D. Fla. May 19, 2016) (concluding that because the ALJ's reasons for discounting Dr. Guttman's opinion were also applicable to the opinion of Dr. Rees, the ALJ's failure to provide an independent discussion of Dr. Rees' opinion was harmless).

In this case, the Court cannot conclude that the ALJ's silence with respect to the weight accorded to Dr. Bradley's opinion was harmless error. Dr. Bradley's opinion contained in the work restriction form is different than the other medical opinions provided where the ALJ did assign weight. And, importantly, in this case, the weight afforded Dr. Bradley's opinion could have made a difference in Plaintiff's assessed RFC because the limitations given by Dr. Bradley in the one-page work restriction form are substantially more restrictive than those found by Dr. Beck, who the ALJ gave substantial weight to, and ultimately were contained in the RFC. "In determining the weight accorded to the opinion of an examining physician who conducts a consultative examination of a plaintiff, the opinion of an examining physician is usually given more weight than the opinion of a non-examining physician." *Miner v. Astrue*, No. 3:11-cv-50-J-TEM, 2012 WL 955221, at *5 (M.D. Fla. Mar. 21, 2012).

There may be good reason for why the ALJ might give less weight to Dr. Bradley.[7] But without having stated so in his opinion there is no way for this Court to know why the restrictions set forth in Dr. Bradley's report were not included. Thus, this Court cannot assess whether the ALJ's conclusions are rational or supported by substantial evidence. Therefore, this case must be remanded for the ALJ to consider Dr. Bradley's opinion contained within the work restriction form and to assign weight to such opinion in his decision.[8] *See id.*; *see also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (internal citations and quotations omitted) ("Although the ALJ is not required to specifically refer to every piece of evidence in the record, he is required to explain the weight he afforded to obviously probative exhibits."); *Owens v. Heckler*, 748 F.2d 1511, 1515–17 (11th Cir. 1984) (declining to affirm an ALJ's decision where it was unclear what test the ALJ used in reaching his conclusions and concluding it was not proper to affirm simply because some rationale might have supported the ALJ's conclusions).

---

[7]     For example, it does not appear that Dr. Bradley's opinion is supported by other evidence in the record. His opinion with regard to restrictions on Plaintiff's ability to lift up to two pounds and requiring a change in position every ten minutes is contradicted by the examination findings in the record, including those cited by the ALJ. (*See* Tr. 23–24.) In addition, nowhere in Dr. Bradley's treatment notes that follow does he give similar restrictions. (*See* Tr. 485–99; 501–17; 519–28; 531–48; 560; 880–81; 884; 887–90; 907–49; 957–69; 972–88; 990–96; 1005; 1015–20; 1022–39.)

[8]     This Court notes that by so finding, this Court is not suggesting that Plaintiff is entitled to disability benefits. Rather, this conclusion reflects the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. It may be that the result of finding no disability may be the same in this case.

### D.    Closed Period of Benefits

"The Commissioner may award Social Security disability benefits either on a continuing basis or, where a once-disabling condition ceases to be disabling, for a 'closed period.'" *Van Winters v. Colvin*, No. 1:12–CV–71–SPM, 2013 WL 4402971, at *8 (E.D. Mo. Aug. 14, 2013) (quoting *Harris v. Sec'y of Dep't of Health & Human Servs.*, 959 F.2d 723, 724 (8th Cir. 1992)). Plaintiff argues that the ALJ failed to properly consider whether Plaintiff was disabled for a closed period of twelve months from April 27, 2009 to February 9, 2011, because the ALJ based his analysis on Dr. Beck's testimony. (Pl.'s Mem. 15.) Plaintiff contends that Dr. Beck's testimony actually supported the possibility of a closed period of disability based on either Listing 1.04 or Plaintiff's surgical history. (Pl.'s Mem. 16.) In response, the Commissioner argues that the ALJ properly considered whether Plaintiff qualified for a closed period of disability and that neither the medical record nor Dr. Beck's opinion support a closed period of disability. (Def.'s Mem. 15.)

The ALJ stated in his decision that "[t]here is no 12 month period during which a finding of disability would be warranted, so there is no basis in this case for considering a partial grant of a closed period of benefits." (Tr. 15.) The ALJ acknowledged that "[t]he representative argued for a possible closed period from April 27, 2009, to February 9, 2011," but the ALJ found "there is no support for this in the objective findings of record or the opinion of the medical expert, Dr. Beck." (Tr. 15.)

As described above, the ALJ properly granted the opinion of Dr. Beck substantial weight. Plaintiff continues to ignore that even though Dr. Beck originally testified that it was possible that Plaintiff's impairments met a listing for a closed period based on

straight leg raising test results, in his final response to interrogatories, taking into account all of the evidence in the medical record, Dr. Beck concluded that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 1157.) In his rationale, Dr. Beck noted that Plaintiff's straight leg raising tests were "usually negative" and that there was no evidence of atrophy. (*Id*.)

Although Plaintiff points to multiple occasions of positive straight leg raising tests during the period from August 2009 until April 2011, that evidence is not sufficient to support a finding of impairment under Listing 1.04.[9] (Pl.'s Mem. 16–17.) Rather, a

---

[9]      Listing 1.04 states as follows:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

(Footnote Continued on Next Page)

finding under the applicable part, Listing 1.04(A), also requires evidence of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 CFR 404, Subpart P, App. 1. Further, in evaluating the medical evidence, the ALJ noted abnormal, but symmetrical reflexes from December 2009 through May 2010. (Tr. 23.) But the ALJ also noted the abnormal reflexes persisted for a period of less than twelve months. (Tr. 23.) This, as well as other evidence in the record, supports the ALJ's conclusion that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from April 27, 2009 through December 31, 2014.

However, because this Court recommends remanding this case to consider Dr. Bradley's work restriction opinion, this Court also recommends that on remand the ALJ consider whether the weight given and analysis provided for Dr. Bradley's opinion changes in any way the RFC or the determination as to whether Plaintiff qualifies for a closed period of disability.

---

(Footnote Continued From Previous Page)

  C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

## RECOMMENDATION

Based on the foregoing, and all the files, records, and submissions herein, **IT IS**

**HEREBY RECOMMENDED** that:

1.      Plaintiff's Motion for Summary Judgment (Doc. No. 15) be **GRANTED**

**IN PART** and **DENIED IN PART**;

2.      Defendant's Motion for Summary Judgment (Doc. No. 18) be **GRANTED**

**IN PART** and **DENIED IN PART**;

3.      This matter be **REMANDED** under Sentence Four of 42 U.S.C. § 405(g)

for further proceedings consistent with this Report and Recommendation.

4.      Judgment be entered accordingly.


Date: December 12, 2017                 *s/ Becky R. Thorson*_____
                                        BECKY R. THORSON
                                        United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within **fourteen (14) days** after being served a copy" of the Report and Recommendation. A party may respond to those objections within **fourteen (14) days** after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement fourteen (14) days from the date of its filing. If timely objections are filed, this Report will be considered under advisement from the earlier of: (1) fourteen (14) days after the objections are filed; or (2) from the date a timely response is filed.